## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SCOTT NELSON GLISSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  05-3250 |
| | ) | |
| SANGAMON COUNTY | ) | |
| SHERIFF'S DEPARTMENT, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on a Motion to Dismiss (d/e 9) (County Defendants' Motion) filed by Defendants Sangamon County Sheriff's Department-Sangamon County Jail, Assistant Sangamon County State's Attorney Dwayne Gab, Sangamon County Assistant Jail Superintendent Terry Durr, Sangamon County Assistant Jail Superintendent William Strayer, Lieutenant Ronald Beckner, Lieutenant Candace Cain, Sergeant Brian Carey, Correctional Officer Carla Carey, Correctional Officer Tammy Powell, Correctional Officer Christopher Doelsch, Correctional Officer Melissa Childress, Sergeant Todd Guy,

Sergeant Guy Bouvet, and Lieutenant Scott Loftus and a Motion to Dismiss (d/e 18) by Village of Grandview Police Officer D. Weiss (Weiss' Motion).[1] For the reasons set forth below, the County Defendants' Motion is ALLOWED, in part, and DENIED, in part.  Weiss' Motion is DENIED.

<u>BACKGROUND</u>

Plaintiff Scott Glisson has filed a ten-count Amended Complaint (d/e 2), alleging violations of 42 U.S.C. § 1983 based on injuries resulting from deprivations of his federal constitutional rights.  The allegations set forth in the Amended Complaint are as follows.  Glisson was convicted of a bad check charge in Circuit Court of Sangamon County, Illinois, Case No. 04-CF-648, on November 22, 2004.  On that same day, Glisson was sentenced to probation for a term of two years.  On July 13, 2005, the Sangamon County State's Attorney's Office filed a petition to revoke Glisson's probation.  Some time later, Chief Circuit Judge Robert J. Eggers issued a warrant for Glisson's arrest.  On August 16, 2005, Glisson was arrested on the warrant issued in Case No. 04-CF-648 and brought to the Sangamon

---

[1]The Court notes that the Amended Complaint contains incorrect spelling and identity of the Defendants.  Because identity of the Defendants is not at issue, the Court will use the correct spelling and correct titles for consistency.  The Court further notes that only Defendant Springfield Police Officer Michael Felecia has not filed a motion to dismiss.

County Jail (Jail).

According to the Amended Complaint, Glisson was mentally unstable at the time of his arrest on August 16, 2005. Glisson suffered from a bi-polar disorder and had been taking medication as a result. Due to his mental condition, Glisson has suffered from periods of mania. The Amended Complaint alleges that all the Defendants knew or should have known of Glisson's mental condition because it was documented at the Jail.

The Amended Complaint alleges that, on or about August 16, 2005, Defendant Lieutenant Loftus, along with other unnamed correctional officers at the Jail, strapped Glisson in a wheelchair and placed him in the corner of a holding room, with no bathroom, for more than four hours. Because of the restraints placed upon him, Glisson was forced to urinate on himself and then sit in his urine for several hours.

The Amended Complaint alleges that Glisson contacted his wife, Attorney Patricia L. Hayes, to discuss matters pertaining to her representation of Glisson in the criminal charges pending against him.[2] On August 17 and August 18, 2005, Hayes was allowed to have unrestricted

---

[2]As noted infra, Hayes did not enter her appearance as Plaintiff's attorney until September 7, 2005, in Cases No. 04-CF-648 and 05-CF-1143.

visits at the Jail with Glisson, who remained in an agitated mental state. Glisson met with Hayes three times on August 18, 2005.  Glisson became agitated during one of his meetings with Hayes on August 18, 2005.  As a result, Hayes pushed the call button to leave the attorney interview room, but Defendant Officer Doelsch, who was in the control room at that time, did not respond to her call.[3]  The Amended Complaint alleges that "the conference continued until the meeting ended."  Amended Complaint, ¶ 36.

Defendant Officer Childress escorted Glisson to the attorney/client interview room when Hayes visited Glisson for the third time on August 18, 2005.  During this time, Glisson informed Childress that Hayes was his wife.  Moments later, Defendants Cain and Childress stormed into the interview room and interrupted the meeting, advising that Glisson could not meet with Hayes because she was married to him.  Cain further advised that Hayes could not represent Glisson and accused Hayes of unethical conduct.

On August 19, 2005, Glisson, who remained in a manic state, bonded out of the Jail.  On August 24, 2005, Glisson and his then-attorney Mike Harmon, appeared in court on the hearing to revoke Glisson's

---

[3]The Amended Complaint does not explain what happened as a result of Doelsch's failure to respond.

probation.  Glisson pleaded guilty to the revocation violation, and his probation was revoked.  Glisson was sentenced to 180-days imprisonment on the violation, with his Mittimus stayed until September 20, 2005.  On August 26, 2005, when Glisson was out of jail and still in a manic state, he was arrested on new criminal charges in Case No. 05-CF-1143.[4]  According to the Amended Complaint, Village of Grandview Police Officer Weiss and Springfield Police Officer Felecia illegally searched Glisson without a warrant or probable cause.  While Glisson was handcuffed, Weiss and Felecia grievously injured him by intentionally slamming him into the corner of a brick building; Glisson sustained a six-inch cut on his back.  Glisson alleges that he was in a manic state when he was arrested on the new charges and that Defendants Weiss and Felecia should have known that he was suffering from a mental disorder.[5]

In his Amended Complaint, Glisson alleges that after he was arrested, Defendants Weiss and Felecia took him to the Jail, where Defendant Loftus, again, strapped him to a wheelchair and placed him in the corner of a

---

[4]The Amended Complaint does not identify the new charges for which Glisson was arrested.

[5]The Amended Complaint does not explain how Defendants Weiss and Felecia could have known about Glisson's mental condition.

holding room.  Because he was prevented from using the bathroom for several hours, Glisson was forced to urinate on himself in front of other inmates and correctional officers.  On that same day, Glisson called Hayes to represent him on the new charges.  On August 27, 2005, Glisson and Hayes were not allowed to meet in the normal attorney/client interview room, but were forced to meet in a room divided by a glass wall and to talk via a monitored phone.  Defendant Cain and other officers  monitored Glisson and Hayes' meeting.  Glisson alleges that confidential papers that Hayes had brought to the interview room for Glisson were reviewed initially by correctional officers before those documents were given to Glisson.  The Amended Complaint alleges that, from August 27, 2005 to September 9, 2005, Defendants Durr, Cain, Strayer, Brian Carey, and Powell denied Glisson's right to have confidential meetings with his attorney at the Jail.

On August 29, 2005, Glisson posted bond on the charges in Case No. 05-CF-1143.  On September 3, 2005, Glisson was rearrested in Case No. 04-CF-648, and since that time, he has been incarcerated in the Sangamon County Jail serving the 180-day sentence imposed on August 24, 2005.  Also, since that day, Glisson has had felony charges pending against him in Case No. 05-CF-1143.  The Amended Complaint alleges that, since

September 3, 2005, Defendants Durr, Cain, Strayer, Carla Carey, Brian Carey, Beckner, Guy, Bouvet, and Powell have denied Glisson's right to have confidential meetings with his attorney to prepare for his defenses to the charges in Case No. 05-CF-1143.[6]   According to the Amended Complaint, Glisson was told that he was not allowed to have unrestricted visits with his attorney because of a court order issued by Judge Eggers and because the Jail did not know which attorney represented him.

The allegations of the Amended Complaint state that Glisson made his first appearance in court for the violation in Case No. 04-CF-648 on September 6, 2005.  Because Glisson's former attorney, Mike Harmon, indicated he would not represent Glisson, Hayes agreed to represent him. On September 6, 2005, Glisson alleges that someone told him that Defendant Durr had said that Glisson could not have regular attorney visits with Hayes without any justification or legitimate reason.  According to the

---

[6]The Amended Complaint is vague.  As noted earlier, the Amended Complaint specifically alleges that from August 27, 2005 to September 9, 2005, Defendants Durr, Cain, Strayer, Carey, and Powell denied Glisson's right to have confidential meetings with his attorney at the Jail.  This suggests that these Defendants' alleged deprivation of Glisson's constitutional right ceased on September 9, 2005.  However, the Amended Complaint further alleges that, since September 3, 2005, these same Defendants, along with Defendants Carla Carey, Guy, and Bouvet, have denied Glisson's right to have confidential meetings with his attorney.  This allegation suggests that Defendants Durr, Cain, Strayer, Brian Carey, and Powell's alleged deprivation of Glisson's constitutional right did not end on September 9, 2005, but is still ongoing.

Amended Complaint, Defendant Beckner told Glisson on September 7, 2005, that he was not allowed to have confidential meetings with Hayes because the Jail did not know which attorney represented him.  Also on September 7, 2005, Hayes formally entered her appearance as Glisson's attorney in Cases No. 04-CF-648 and 05-CF-1143.  Glisson alleges that even after Hayes entered her appearance as his attorney, he was still denied confidential meetings with Hayes on the evening of September 7, 2005.

According to the Amended Complaint, on September 8, 2005, Hayes and Assistant State's Attorney Kelly went before Judge Holmes who entered an order directing the Jail to allow Glisson to have confidential and unrestricted visits with Hayes.  The Amended Complaint alleges that Defendant Cain met with Judge Holmes ex parte and told him that Judge Eggers had ordered Hayes to meet with Glisson in a room divided by a glass wall.  Glisson alleges that Judge Eggers never did this.  On September 9, 2005, Judge Eggers entered an order, directing the Jail to allow Glisson unrestricted access to his attorney.  Despite this order, Defendants Gab, Durr, Strayer, Beckner, Cain, Brian Carey, Carla Carey, Guy, and Powell, as well as Cathy Strayer, continued to deny Glisson the right to have

confidential meetings with Hayes.[7]

The Amended Complaint alleges specifically that, on September 15, 2005, Defendant Durr denied Glisson unrestricted access to his attorney even after Hayes handed Durr a copy of the Seventh Circuit case, <u>Adams v. Carlson</u>, advising him that Defendants could not deny Glisson unrestricted access to his attorney based on the <u>Adams</u> case. <u>Adams</u>, 488 F.2d 619 (7th Cir. 1973).

On September 17, 2005, Defendants Bouvet and Guy denied Glisson his right to have unrestricted access to his attorney. Glisson, therefore, had to meet with Hayes in a visiting room divided by a glass wall and had to communicate with Hayes via a monitored phone. On that day, Defendant Guy searched and confiscated legal mail, a file folder, post-it-notes, labels, and envelopes that Hayes had brought into the interview room to assist Glisson in his preparation for the charges pending against him. Glisson alleges that he was told by someone that the restrictions were placed on his visitation rights with his attorney because of a "Court Order." According to Glisson, the Defendants have failed to produce proof of this "Court Order,"

---

[7]The Court notes that Cathy Strayer is not a party Defendant in this case. The Amended Complaint fails to identify her.

prohibiting Glisson from having confidential meetings with his attorney.

The allegations of the Amended Complaint state that Glisson, again, was denied unrestricted access to his attorney on September 20, 2005. Defendants Brian Carey and Strayer, along with Sergeant Smith and Lieutenant Brents, monitored Glisson's meeting with Hayes.[8]  Glisson was forced to "pass confidential communications through the correctional officers." Amended Complaint, ¶ 66(C).

On September 21, 2005, Glisson filed this federal suit.  On September 22, 2005, a hearing was held before Judge Eggers on a Rule to Show Cause regarding the Jail's alleged failure to comply with the September 9, 2005, Order (September 2005 Order), directing the Jail to allow Glisson to have unrestricted access to his attorney.  Judge Eggers denied the Rule to Show Cause because he found that, based on the evidence presented to him, the Jail had not violated the September 2005 Order.  During this hearing, Defendant Cain testified that Glisson was prevented from having confidential meetings with Hayes because of an alleged argument that had occurred between Hayes and Glisson during one

---

[8]The Court notes that Sergeant Smith and Lieutenant Brents are not party Defendants in this case.

10

meeting held in the Jail interview room on August 18, 2005.  Glisson alleges that Defendant Cain's testimony is false because Glisson was not in any way disciplined for this argument or for causing a disruption at the Jail. Defendant Cain further testified before Judge Eggers that Hayes was placed on a "list" in the Sheriff's Office as an attorney with restricted visits with clients.  The Amended Complaint alleges that Hayes was never provided with any reason why she was placed on this list, denying her unrestricted access to her clients.

According to the Amended Complaint, on September 24, 2005, Glisson was, again, denied the right to have confidential meetings with Hayes.  When Hayes arrived at the Jail, she was given a visitor badge rather than a legal badge.  More than 10 correctional officers monitored Glisson and Hayes' meeting.  Defendant Bouvet examined the legal documents that Hayes had brought in for Glisson's review.

On September 26, 2005, Hayes met with Defendants Strayer and Durr asking for a copy of the rule that authorized the Sheriff's Department to arbitrarily deny her access to her clients without due process.  The Amended Complaint alleges that Defendants Strayer and Durr never responded to this request.  Also on September 26, 2005, Glisson was denied

11

unrestricted access to his attorney and was forced to meet with Hayes in a room monitored by correctional officers, including Defendants Childress and Doelsch.  On September 26, 2005, Glisson was forced to meet with Hayes in a room monitored by Defendant Powell.[9]  On September 30, 2005, Glisson's meeting with Hayes was, again, monitored by Defendant Powell.

According to the Amended Complaint, Glisson remains detained in the Sangamon County Jail and is still being denied the right to have confidential meetings with his attorney to prepare for the charges pending against him in Case No. 05-CF-1143 and to seek redress for the alleged civil rights violations.

Glisson filed this Amended Complaint in the present case on October 4, 2005.  The Amended Complaint names as Defendants the Sangamon County Sheriff's Office-Sangamon County Jail, Assistant Sangamon County State's Attorney Dwayne Gab, Sangamon County Jail Superintendent Terry Durr, Sangamon County Assistant Jail Superintendent William Strayer,

---

[9]The Court notes that Plaintiff's Amended Complaint is vague.  Plaintiff alleges that on September 26, 2005, he was forced to meet with his attorney in a room monitored by correctional officers, including Defendants Childress and Doelsch. Plaintiff then states that on the same day, he was forced to meet with Hayes in a room monitored by Defendant Powell.  Plaintiff does not clarify whether these meetings were separate meetings or a single meeting monitored by all three Defendants.

Lieutenant Ronald Beckner, Lieutenant Candace Cain, Sergeant Brian Carey, Correctional Officer Carla Carey, Correctional Officer Melissa Childress, Sergeant Todd Guy, Sergeant Guy Bouvet, Lieutenant Scott Loftus, Springfield Police Officer Michael Felecia, and Village of Grandview Police Officer D. Weiss.[10]  The Amended Complaint states that Glisson is suing all of the individual Defendants in their personal capacities.

Glisson has filed a ten-count Complaint against the Defendants, alleging various constitutional violations pursuant to 42 U.S.C. § 1983. Glisson alleges Due Process/Eighth Amendment claims against the Jail (Count I) and individual Defendants Durr (Count II), Strayer (Count III), Beckner (Count IV), and Loftus (Count X).  Glisson alleges Access to Courts/Access to Counsel claims (access claims) against the Jail (Count I) and individual Defendants Durr (Count II), Strayer (Count III), Beckner (Count IV), Cain (Count V), Gab (Count VI), Doelsch and Childress (Count VII), and Brian and Carla Carey, Guy, Bouvet, and Powell (Count VIII).  Glisson alleges Equal Protection claims against the Jail (Count I) and individual Defendants Durr (Count II), Strayer (Count III), Beckner (Count

---

[10]The Court notes that Defendant Weiss filed a Motion to Dismiss on November 17, 2005, but Plaintiff has not yet filed a response to Weiss' Motion to Dismiss.

IV), and Loftus (Count X).  Glisson alleges Excessive Use of Force claims against Defendants Weiss and Felecia (Count IX).  Glisson finally alleges Retaliation claims against the Jail (Count I) and individual Defendants Durr (Count II), Strayer (Count III), Beckner (Count IV), and Cain (Count V). Glisson asks this Court to: (1) declare the acts and practices complained of to be in violation of 42 U.S.C. § 1983; (2) enjoin and permanently restrain the alleged constitutional violations; (3) award compensatory damages against the Jail for its constitutional violations and punitive damages against the individual Defendants for their constitutional violations; and (4) award pre-judgment interest and Plaintiff's cost of this action, as well as reasonable attorney fees.

The County Defendants move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant Weiss moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6).  A motion under Rule 12(b)(1) challenges the court's subject matter jurisdiction.  In analyzing such a motion, the Court must accept all well-pleaded facts as true and draw all reasonable inferences from those allegations in favor of the plaintiff.  <u>Long v. Shorebank Dev. Corp.</u>, 182 F.3d 548, 554 (7th Cir. 1999).  Plaintiff bears the burden of demonstrating

that subject matter jurisdiction exists.  <u>United Phosphorus, Ltd. v. Angus Chemical Co.</u>, 322 F.3d 942, 946 (7th Cir. 2003).  A Rule 12(b)(6) motion to dismiss for failure to state a claim similarly requires the court to consider the allegations in the light most favorable to plaintiff and to accept all well-pleaded facts as true.  <u>Cole v. U.S. Capital, Inc.</u>, 389 F.3d 719, 724 (7th Cir. 2004).  A complaint should not be dismissed, under Rule 12(b)(6), for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Doherty v. City of Chicago</u>, 75 F.3d 318, 322 (7th Cir. 1996).  The plaintiff is required only to provide a short and plain statement of his claim "'that will give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)); <u>Fed. R. Civ. P.</u> 8(a); <u>see</u> <u>also</u> <u>Lucien v. Preiner</u>, 967 F.2d 1166, 1168 (7th Cir. 1992).

A.   <u>County Defendants' Rule 12(b)(1) Motion</u>

The Defendants Jail, Dwayne Gab, Terry Durr, William Strayer, Ronald Beckner, Candace Cain, Brian Carey, Carla Carey, Tammy Powell, Christopher Doelsch, Melissa Childress, Todd Guy, Guy Bouvet, and Scott

Loftus assert that, to the extent that Plaintiff claims he was denied his right to have meaningful and unrestricted access to counsel/access to courts, such claims should be dismissed pursuant to Rule 12(b)(1), because they are barred by the <u>Rooker-Feldman</u> doctrine.   The Defendants assert that Plaintiff has already litigated his access claims before Judge Eggers of the Seventh Judicial Circuit, Sangamon County, Illinois, rendering such claims no longer reviewable by this Court under <u>Rooker-Feldman</u>.

As an initial matter, the Court recognizes that, as a general rule, federal courts, other than the Supreme Court, have no subject matter jurisdiction to review state court judgments in civil litigation.  <u>See</u> <u>District of Columbia Ct. of App. v. Feldman</u>, 460 U.S. 462, 482 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923).  Federal courts do have authority to review collaterally state court judgments in criminal cases, but only through the habeas corpus process, which is not at issue here.  <u>See</u> 28 U.S.C. § 2254; <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 488-90 (1973).  The <u>Rooker-Feldman</u> doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings . . . ." <u>Exxon Mobile Corp. v. Saudi Basic Industries Corp.</u>, 125

S.Ct. 1517, 1521-22 (2005).

The Court finds that <u>Rooker-Feldman</u> does not apply in this case based on several reasons. First, Glisson's access claims raise claims distinct from the issue that was litigated before Judge Eggers and thus, outside the scope of <u>Rooker-Feldman</u>. The hearing held before Judge Eggers on September 22, 2005, was on Glisson's Petition for Rule to Show Cause in his criminal cases, 04-CF-648 and 05-CF-1143, for alleged violations of Judge Eggers' September 2005 Order, directing the Jail to allow attorney/client contact between Glisson and Hayes. <u>County Defendants' Motion to Dismiss</u>, Exhibit, <u>Report of Excerpts of Proceedings of the Hearing before Judge Eggers</u>, pp. 10, 20, 27. The hearing was not on whether Plaintiff was denied his constitutional right of access to courts/access to counsel, but on whether the Jail was in contempt of Judge Eggers' September 2005 Order. Judge Eggers found that the Sangamon County Jail was not in contempt of his September 2005 Order, even though visitation restrictions were placed on Glisson's contact with Hayes following a fight between Glisson and Hayes during one of their meetings at the Jail. Judge Eggers further determined that he lacked jurisdiction to rule on Glisson's request for injunctive relief in his criminal cases pending in

Sangamon County, Illinois, Cases No. 04-CF-648 and 05-CF-1143, based on the claim that he was being denied his access to courts/access to counsel.

Second, since <u>Rooker-Feldman</u> only applies to state court judgments in civil cases, the doctrine does not apply in the present case because Judge Eggers' rulings were in state court criminal proceedings. Third, the doctrine does not apply because this is not a situation where a state-court loser is "complaining of injuries caused by state-court judgments rendered before the district court proceedings . . . ." <u>Exxon Mobile Corp.</u>, 125 S.Ct. at 1521-22. Indeed, Plaintiff is not complaining of injuries caused by Judge Eggers' September 2005 Order and is not directly appealing the Order. The <u>Rooker-Feldman</u> doctrine, therefore, does not apply. Thus, the County Defendants' Motion to Dismiss for lack of subject matter jurisdiction filed by the Jail, Dwayne Gab, Terry Durr, William Strayer, Ronald Beckner, Candace Cain, Brian Carey, Carla Carey, Tammy Powell, Christopher Doelsch, Melissa Childress, Todd Guy, Guy Bouvet, and Scott Loftus is denied.[11]

---

[11]The Court notes that Defendants Terry Durr, William Strayer, Brian Carey, Todd Guy, Guy Bouvet, Carla Carey, Candace Cain, Tammy Powell, and Ronald Beckner move to dismiss based only on the <u>Rooker-Feldman</u> doctrine. These Defendants fail to raise any Rule 12(b)(6) defenses against other constitutional claims asserted against them. The Court, therefore, does not address other claims asserted against these Defendants.

B.   Rule 12(b)(6) Motions

The Defendants Jail, Gab, Childress, Doelsch, Loftus, and Weiss have filed Motions to Dismiss pursuant to Rule 12(b)(6), asserting that Plaintiff failed to state a claim upon which relief can be granted. Plaintiff alleges the following constitutional claims against these Defendants pursuant to § 1983: (1) Due Process/Eighth Amendment claims; (2) Access to Courts/Access to Counsel claims; (3)Equal Protection claims; (4) Excessive Use of Force claim; and (5) Retaliation claim.[12]   The Court will address these claims individually.

1.   Due Process/Eighth Amendment Claims

Glisson alleges that Defendants Jail (Count I) and Loftus (Count X) violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by mistreating him on August 16 and August 26, 2005.

---

[12]Plaintiff relies on both the Fifth and the Sixth Amendment rights to counsel as the basis for which he derives his right of meaningful access to courts and counsel. The Court notes that Plaintiff's claim that he was denied his access to courts/access to counsel does not stem from the Fifth Amendment right to counsel, which involves the assistance of counsel during custodial interrogations. The Court further notes that Plaintiff's claim regarding the conditions of confinement should have also been brought under the Due Process Clause of the Fourteenth Amendment because Plaintiff was a pretrial detainee, rather than a convicted inmate, when he was in state custody awaiting a hearing of the charges in Case No. 05-CF-1143. However, Plaintiff's failure to correctly identify the constitutional rights under which his claims arise does not warrant a dismissal of his claims. As long as Plaintiff alleges violations that are viable under any particular federal right, the Court will analyze the claim accordingly. See Antonelli v. Sheahan, 81 F.3d 1422, 1433 n. 8 (7th Cir. 1995).

As an initial matter, the Court notes that "[i]n order to bring a Section 1983 claim, the plaintiff must allege that a person acting under color of state law engaged in conduct that deprived him of a right, privilege or immunity secured by the Constitution." Henderson v. Bolanda, 253 F.3d 928, 932 n.3 (7th Cir. 2001)(citing 42 U.S.C. § 1983).   Furthermore, convicted "prisoners and pretrial detainees derive their constitutional rights from different sources: The Eighth Amendment's prohibition on cruel and unusual punishment gives rise to the constitutional rights of a convicted state prisoner." Brown v. Budz, 398 F.3d 904, 910 (7th Cir. 2005) (quoting, Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 259 n.1 (7th Cir. 1996)). A pretrial detainee derives his right from the Fourteenth Amendment's Due Process Clause because the State cannot punish a pretrial detainee without securing a formal adjudication of guilt.  Id.  However, "[t]he protections for pre-trial detainees are at least as great as the Eighth Amendment protections available to a convicted prisoner, and [courts] frequently consider the standards to be analogous." Washington v. LaPorte County Sheriff's Dept., 306 F.3d 515, 517 (7th Cir. 2002) (internal citations and quotations omitted).   Thus, "there is little practical difference between the two standards." Weiss v. Cooley, 230 F.3d 1027, 1032 (7th Cir. 2000).

20

As a preliminary matter, the Court must determine what status--pretrial detainee or prisoner--is properly attributed to Glisson during his detainment in the Jail on August 16 and August 26, 2005.  See Antonelli, 81 F.3d at 1428 n. 2.  There is, however, some uncertainty about whether Glisson's claim regarding the mistreatment by the Jail on August 16, 2005 (first detainment) arises under the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment.  See Palmer v. Marion County, 327 F.3d 588, 592-3 (7th Cir. 2003) (citing Brown v. Harris, 240 F.3d 383, 388 (4th Cir. 2001)) (indicating that there is confusion about whether a detainee awaiting a probation revocation hearing is a pretrial detainee or a convicted prisoner).  The question is whether Glisson, who was detained awaiting a probation revocation hearing, could be punished under the Eighth Amendment.  See Harris, 240 F.3d at 388.  "[T]he state does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."  Ingraham v. Wright, 430 U.S. 651, 671 n. 40 (1977).  In the present case, even though Glisson had been convicted of the underlying offense related to his probation violation, at the time of the first detainment, he was awaiting a hearing on his probation violation, and thus,

had not been found guilty of violating the terms of his probation.  See Palmer, 327 F.3d at 593.  In order to determine under which constitutional right Glisson's claims related to the first detainment arise, the Court must "decide whether the underlying [bad check] conviction or the establishment of a probation violation operates as the 'formal adjudication' required under the Eighth Amendment."  Id.  The Court, however, need not determine the aforementioned inquiry as both standards require the Court to determine whether the jail or its officials have been "deliberately indifferen[t] to a substantial risk of serious harm to an inmate."  Farmer v. Brennan, 511 U.S. 825, 828 (1994) (internal quotations omitted).  The Court will, therefore, analyze the claim related to the first detainment under the Eighth Amendment.

With respect to Glisson's arrest and subsequent detainment in the Jail (second detainment) on August 26, 2005, for charges in Case No. 05-CF-1148, Glisson was a pretrial detainee because he had not been convicted of the new criminal charges pending against him.  See Frake v. City of Chicago, 210 F.3d 779, 781 (7th Cir. 2000).  Any mistreatment and denial of constitutional rights that Glisson alleges against the Jail during the second detainment, therefore, must be analyzed under the Due Process Clause of

22

the Fourteenth Amendment.

With this framework in mind, the Court thus turns to Glisson's claims against the Jail.[13]  A plaintiff wishing to bring a § 1983 action against a municipal entity must sue the entity itself or the individual officers in their official capacities, not municipal departments.  Under Illinois law, the Sheriff's Department is a suable entity under § 1983.  See Ruffino v. Sheahan, 218 F.3d 697, 700 (7th Cir. 2000); Scott v. O'Grady, 975 F.2d 366, 370 (7th Cir. 1992); see also Il. Const. art. 7, § 4(C).  Thus, the Sangamon County Sheriff's Department-Sangamon County Jail is a proper municipal entity in the present case.  A municipality is liable under § 1983 if a plaintiff shows that "deliberate action attributable to the municipality directly caused a deprivation of federal rights."  Frake, 210 F.3d at 781 (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 415 (1997)).  In other words, Glisson must show that municipal policy makers enforced a policy or custom that caused the deprivation of his federal rights.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); see also City

---

[13]The Amended Complaint makes reference to other similarly situated inmates in the Jail who are being denied their constitutional rights.  By making such reference, Plaintiff may be alluding to a class action claim.  However, Plaintiff has not indicated anywhere in the Amended Complaint that he wishes to pursue a class action suit.  Therefore, the Court will not construe Plaintiff's Complaint as a class action suit.

of Oklahoma v. Tuttle, 471 U.S. 808 (1985).  With respect to Glisson's claim that the Jail mistreated him during his first detainment, the Court finds that Glisson has sufficiently stated a claim under the Eighth Amendment.   The Eighth Amendment prohibits punishments which amount to unnecessary and wanton infliction of pain, punishments that are so totally devoid of any penological justification that they result in the gratuitous infliction of suffering.  Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).  Such infliction of pain is not limited to physical pain, but also includes wanton infliction of psychological pain on a prisoner.  Id.  However, not every humiliating, psychological discomfort a prisoner complains of rises to a constitutional violation.  Id.  As noted earlier, a prison official must have inflicted pain that is "deliberate or otherwise reckless in the criminal law sense, which means that the [official] must have committed an act so dangerous that his knowledge of the risk can be inferred or that the [official] actually knew of an impending harm easily preventable." Antonelli, 81 F.3d at 1427 (citing Miller v. Neathery, 52 F.3d 634, 638 (7th Cir. 1995)).  Accordingly, to state an Eighth Amendment claim, Glisson must allege that he was subjected to unnecessary and wanton infliction of pain, without any

24

penological justification.  He must further allege that the Defendants had actual knowledge of his mental condition, or acted in reckless disregard of such condition.

Glisson specifically alleges that the Defendant Jail maintained policies and customs tolerating cruel and unusual punishment of convicted prisoners and pretrial detainees.  He alleges that the Jail, by and through its elected officers and appointed employees, strapped him to a wheelchair for several hours, forcing him to urinate on himself and sit in his urine for several hours, while he was in a manic state.  He further alleges that the Jail knew of his mental condition because it was documented at its facility.  He alleges that the Jail's acts were intentional with malice and reckless disregard for his federally protected rights.  If true, these allegations state an Eighth Amendment claim against the Jail.

Similarly, Glisson has stated a claim under the Due Process Clause of the Fourteenth Amendment during his second detainment as a pretrial detainee.  A pretrial detainee, not found guilty of a crime, cannot be punished.  <u>Frake</u>, 210 F.3d at 781.  Thus, to determine whether restrictive conditions in pretrial detention were constitutional, courts must ask "whether those conditions amount to punishment of the detainee."  <u>Bell v.</u>

Wolfish, 441 U.S. 520, 535 (1979).  "The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that serves to punish a pre-trial detainee."  May v. Sheahan, 226 F.3d 876, 884 (7th Cir. 2000).  If the use of bodily restraints is not connected to a legitimate non-punitive government purpose or such restraints seem excessive, they violate the Due Process Clause of the Fourteenth Amendment.  Id. (citing Bell, 441 U.S. at 561).  "[I]f the brutal treatment is gratuitous, due process in its substantive sense has been violated."  Hart v. Sheahan, 396 F.3d 887, 892 (7th Cir. 2005).  Furthermore, the defendant must have acted in an intentional or criminally reckless manner.  Antonelli, 81 F.3d at 1428 (citing Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991)).

In support of his Due Process claim against the Jail, Glisson specifically alleges that the Jail maintained policies and customs tolerating cruel and unusual punishment of convicted prisoners and pretrial detainees. He alleges that the Jail, by and through its elected officers and appointed employees, strapped him to a wheelchair for several hours, forcing him to urinate on himself and sit in his urine for several hours, while he was in a manic state.  He further alleges that the Jail knew of his mental condition

because it was documented at its facility.  He alleges that the Jail's acts were intentional with malice and reckless disregard for his federally protected rights.  If true, these allegations state a Due Process claim against the Jail.

The Jail argues that Glisson has not pleaded enough detail to state a claim.  However, viewing these allegations as true and in the light most favorable to Glisson at this stage, the Court finds that these allegations meet the pleading requirements of Rule 8.  Therefore, the Jail's Motion to Dismiss that part of Glisson's claim in Count I concerning Due Process/Eighth Amendment violations is denied.

The Court turns to an examination of the claim, related to the first detainment, against Defendant Loftus.  Glisson specifically alleges that Lieutenant Loftus and other unnamed correctional officers at the Jail strapped him to a wheelchair, placed him in a detaining cell for several hours, withheld the use of the bathroom for over 4 hours, and forced him to urinate on himself and sit in his urine in front of other inmates and other correctional officers at the Jail.  He further alleges that Loftus knew or should have known that he suffered from a mental illness, but intentionally disregarded this.  Glisson alleges that Loftus' conduct toward him was intentional with malice and reckless disregard for his federally protected civil

rights.  These allegations sufficiently state an Eighth Amendment claim against Defendant Loftus.

Loftus argues that Glisson's allegations fail to state an Eighth Amendment violation because "the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" County Defendants' Motion to Dismiss, p. 10 (quoting Hudson v. McMillian, 503 U.S. 1, 10 (1992)).  However, the Court finds that viewing the allegations in the light most favorable to Glisson, Glisson has adequately alleged an Eighth Amendment claim against Loftus.

Glisson has also alleged that his Fourteenth Amendment due process rights have been violated during his second detainment at the Jail for the criminal charges in Case No. 05-CF-1148.  Glisson alleges that despite knowing his mental condition, Defendant Loftus, in concert with other unnamed correctional officers, strapped him to a wheelchair for several hours, without the use of the bathroom.  Because of the restraints, Glisson alleges that he was forced to urinate on himself and sit in his urine in front of other inmates and correctional officers, while he was in a manic state. Glisson alleges that Loftus' conduct toward him was intentional with malice and reckless disregard for his federally protected civil rights.  If true, these

28

allegations sufficiently state a Fourteenth Amendment due process claim against Defendant Loftus concerning the conditions under which he was detained.

Loftus argues that since Glisson was in a manic state, the use of a wheelchair as a restraint was reasonable.  He argues that no injury from the urine is pleaded except some discomfort which may be presumed.  However, as indicated earlier, a plaintiff need not allege that he was physically injured to claim that his due process rights have been violated.  The gratuitous infliction of pain is not limited to physical pain, but includes psychological pain.  Intentionally denying an inmate the use of a bathroom for hours and requiring him to sit in his own urine could constitute the requisite psychological pain to support this claim.  Therefore, Loftus' request to dismiss that part of Glisson's claim in Count X concerning the Eighth Amendment violation is denied.

## 2.    Access to Courts Claim

Glisson alleges that Defendants Jail (Count I), Gab (Count VI) and Doelsch and Childress (Count VII) denied his right to have meaningful or unrestricted access to courts/access to counsel.   "[T]he Fourteenth Amendment guarantees meaningful access to courts" and "the opportunity

to communicate privately with an attorney is an important part of that meaningful access." <u>Dreher v. Sielaff</u>, 636 F.2d 1141, 1143 (7th Cir. 1980) (internal citations omitted).  Policies or acts that prevent either convicted prisoners or pretrial detainees from going to court and that limit their access to attorneys are not allowed.  <u>May</u>, 226 F.3d at 883.  "To prove a violation of this right, a plaintiff must demonstrate that state action hindered his or her efforts to pursue a nonfrivolous legal claim and that consequently the plaintiff suffered some actual concrete injury."  <u>Id.</u> (citing <u>Lewis v. Casey</u>, 518 U.S. 343, 350-54 (1996)).  However, in analyzing a meaningful access to courts claim, courts must be mindful that prison administrators also have an interest in maintaining institutional security and preserving internal order.  <u>Bell,</u> 441 U.S. at 546.  Thus, courts must balance these conflicting interests.

Turning first to Glisson's claim against the Jail, Glisson makes the following allegations.  Glisson alleges that the Jail, "through the acts of the Sheriff and the Superintendent of the Sangamon County Jail, maintained a policy and practice of arbitrarily denying inmates confidential consultations with their attorneys without due process . . . ."  <u>Amended Complaint</u>, ¶ 5.  The Jail argues that Glisson has failed to allege sufficient

factual allegations to state a claim.  However, viewing these allegations as true, the Court finds that these allegations allege an access claim against a municipal entity.  The Jail's request to dismiss that part of Glisson's claim in Count I that he was denied meaningful access to courts/access to counsel is denied.

The Court turns to allegations against Defendant Gab.  The Amended Complaint alleges that, as an Assistant Sangamon County State's Attorney, Gab participated in and directed a policy and custom at the Jail that has resulted in the arbitrary and capricious denial of Glisson's right to have meaningful access to counsel/access to courts.  The Amended Complaint further alleges that Gab's conduct has been intentional with malice and reckless disregard for Glisson's federally protected civil rights.

Gab asserts that he is entitled to absolute prosecutorial immunity on all of Glisson's claims.  He argues that, in his role in representing the State of Illinois in the proceedings before Judge Eggers, he was participating in an integral part of the judicial process.  In the alternative, Gab argues that even if his representation in the Rule to Show Cause proceeding placed him in the role of representing the Jail in a civil litigation, he then would not be acting under color of state law for the purposes of § 1983.  This is because

"[l]itigants and their attorneys are not regarded as acting under color of law, . . . by virtue of their taking part in civil actions in state courts." County Defendants' Motion to Dismiss, p. 8.

Prosecutors are absolutely immune from a § 1983 suit for damages for initiating a prosecution and for presenting the State's case. Imbler v. Pachtman, 424 U.S. 409, 431 (1976). To determine whether an official is entitled to absolute or qualified immunity, courts must look at the nature of the function the official carried out. Indeed, "immunity is justified and defined by the functions it protects and serves, not by the persons to whom it attaches." Forrester v. White, 484 U.S. 219, 227 (1988).

Turning to the instant case, the Court finds that it is very unclear what the allegations against Gab concern. Glisson alleges that Gab participated in and directed a policy and custom at the Jail that resulted in the denial of his constitutional rights. However, Gab is not employed at the Jail or by the Sheriff's Department. No specificity is found in the Amended Complaint as to how he directed a policy at the Sheriff's office, or what policy it was. The only other specific thing alleged as to Gab is that he violated his statutory duty to enforce the law and " . . . unsure that the Sangamon County Jail did not violate the Plaintiff's constitutional rights."

32

Amended Complaint, ¶ 113.  This is undecipherable.  The Motion to Dismiss is allowed as to Gab without prejudice to repleading.  At this point, the Court cannot tell whether Gab's alleged actions would fall within the scope of things for which he is immune.

Turning to Glisson's access claims against Defendants Doelsch and Childress, the Court finds that the allegations sufficiently state access to courts claims against both Defendants.  Glisson alleges that Defendants Doelsch and Childress directly participated in the arbitrary and capricious denial of his access to counsel.  He further alleges that Doelsch and Childress conspired with other officers at the Jail to deny his rights to counsel and access to courts.  Specifically, Glisson alleges that Defendant Childress prevented him from meeting with attorney Hayes when she learned that Hayes was married to him.  Glisson alleges that Defendant Doelsch monitored Glisson's meetings with his attorney.  Glisson alleges that he had to meet with his attorney in interview rooms that were not amenable to meaningful attorney-client communication.  Glisson also alleges that, because he has been unable to meet with his attorney privately, he has been prevented from preparing defenses with respect to the charges pending against him in Case No. 05-CF-1143 and from seeking redress for his civil

rights violations.  If true, these allegations state an access claim.

Defendants Doelsch and Childress argue that Glisson has not pleaded enough detail to explain the basis for his denial of access allegations. Under the liberal notice pleading standard, however, a complaint must contain only "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Leatherman, 507 U.S. at 168.  (internal quotations and citations omitted); see also Fed. R. Civ. P. 8(a).  Furthermore, a plaintiff need not plead particular legal theories or particular facts in order to state a claim.  Glisson has met this low threshold in connection with his access claims against Doelsch and Childress.  Defendants Doelsch and Childress' request to dismiss that part of Glisson's claim in Count VII concerning the denial of access to courts/access to counsel is denied.

### 3.   Equal Protection Claim

Glisson alleges that the Jail (Count I) and Defendant Loftus (Count X) discriminated against him on the basis of his mental illness in violation of the Equal Protection Clause.  "To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly

situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." Budz, 398 F.3d at 916 (quoting McNabola v. Chicago Transit Auth., 10 F.3d 501, 513 (7th Cir. 1993)).  If an individual is a member of a protected class, any policy that discriminates against him or her must be reviewed under the strict scrutiny test.  See Johnson v. California, 125 S.Ct. 1141, 1146 (2005).  However, the Supreme Court in City of Cleburne v. Cleburne Living Center held that mentally retarded persons, a subset of the disabled class, are not a suspect or quasi-suspect class.  Cleburne Living Center, 105 S.Ct. 3249 (1985). The Supreme Court, thus, applied the rational basis test, rather than strict scrutiny, to evaluate claims of discrimination presented by such persons.

Accordingly, "[i]n the prison context, the Equal Protection Clause of the Fourteenth Amendment requires inmates to be treated equally, unless unequal treatment bears a rational relation to a legitimate penal interest." May, 226 F.3d at 882 (citing Hudson v. Palmer, 468 U.S. 517, 523 (1984)); Williams v. Lane, 851 F.2d 867, 881 (7th Cir. 1988) (finding that differences in treatment among inmates in terms of confinement will support an equal protection claim).

With respect to Glisson's claim against the Jail, the Court finds that

the allegations sufficiently state an equal protection claim.  Glisson alleges that the Jail maintained a policy and practice that discriminated against him because of his mental illness, in violation of the Equal Protection Clause. These allegations meet the pleading requirements of Rule 8.  The Jail's request to dismiss that part of the claim in Count I concerning an equal protection violation is denied.

In support of his equal protection claim against Defendant Loftus, Glisson alleges that Defendant discriminated against him in terms of the type of confinement on the basis of his mental illness.  These allegations, if true, sufficiently state an equal protection claim, because "Rule 8 does not require fact pleading by design."  Budz, 398 F.3d at 917.  Loftus' request to dismiss that part of the claim in Count X concerning an equal protection violation is denied.  Evidence may later demonstrate a rational penal interest existed to confine Plaintiff, for a period, to a wheelchair, but at this stage, the Court must assume the allegations to be true.

### 4.  Excessive Use of Force Claim

Glisson alleges that Defendant Weiss violated his Eighth Amendment right to be free from excessive use of force when Defendant Weiss arrested him on August 26, 2005.  The Fourth Amendment, not the

Eighth Amendment, protects individuals against the excessive use of force during an arrest.  <u>Chapman v. Keltner</u>, 241 F.3d 842, 847 (7th Cir. 2001) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989)).  Defendant Weiss moves to dismiss based on the fact that Glisson has failed to correctly identify the constitutional right under which his claim arises.  However, such a failure does not warrant a dismissal.  Indeed, "'a complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.'" <u>Perry v. Sheahan</u>, 222 F.3d 309, 315 (7th Cir. 2000) (quoting <u>Bartholet v. Reishauer A.G. (Zurich)</u>, 953 F.2d 1073, 1078 (7th Cir. 1992)).  As long as Glisson's allegations amount to a constitutional violation, Glisson has stated a claim.

"A seizure occurs if a government actor by means of physical force or show of authority, in some way restrain[s] the liberty of a citizen. Whether excessive force was used is evaluated under the objective reasonableness standard, under which courts assess whether the actor's actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." <u>Chapman</u>, 241 F.3d at 847 (internal citations and quotations omitted).

In support of his Fourth Amendment claim, Glisson alleges that

Defendant Weiss used excessive force when he arrested Glisson on August 26, 2005. Glisson alleges that Weiss arrested him without a warrant or probable cause. He further alleges that Weiss intentionally pushed him to a brick wall, causing grievous injury on his back. Glisson alleges that he sustained a six-inch cut on his back. These allegations meet the pleading requirements of Rule 8. Weiss' request to dismiss is denied.

### 5.   Retaliation Claim

Glisson claims that he has been a victim of retaliation. He alleges retaliation claims against Defendants Jail, Durr, Strayer, Beckner, and Cain. The Court, however, will only address the retaliation claim against the Jail because, as indicated earlier, Defendants Durr, Strayer, Beckner, and Cain move only to dismiss based on Rooker-Feldman. Glisson only alleges that the Jail retaliated against him. He, however, fails to: (1) identity the act or acts claimed to have constituted retaliation, (2) identify what he reported, and (3) identify to whom he reported. Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (stating that a complaint would be insufficient if the plaintiff merely "allege[s] that the defendants had retaliated against him for filing a suit, without identifying the suit or the act or acts claimed to have constituted retaliation . . . ."). The Jail is not given fair notice of what

Glisson's claim is in this instance.   These allegations, therefore, fail to sufficiently state a retaliation claim against the Jail.   The Jail's request to dismiss that part of the claim in Count I concerning retaliation is allowed.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss (d/e 9) by Defendants Sangamon County Sheriff's Department-Sangamon County Jail, Dwayne Gab, Terry Durr, William Strayer, Ronald Beckner, Candace Cain, Brian Carey, Carla Carey, Tammy Powell, Christopher Doelsch, Melissa Childress, Todd Guy, Guy Bouvet, and Scott Loftus is ALLOWED, in part, and DENIED, in part.   The Motion is allowed with respect to that part of Glisson's claim in Count I that the Jail retaliated against him.   The Motion is also allowed with respect to claims against Defendant Gab, without prejudice to Plaintiff's right to file an amended complaint.   The Motion is denied in all other respects.   Defendant D. Weiss' Motion to Dismiss (d/e 18) is also DENIED.   Plaintiff is ordered to file any amended complaint on or before January 20, 2006.   Defendants are thereafter ordered to answer or otherwise plead by February 10, 2006.

IT IS THEREFORE SO ORDERED.

ENTER:   January 6, 2006.

FOR THE COURT:

                            _____s/  Jeanne E. Scott_____
                                    JEANNE E. SCOTT
                       UNITED STATES DISTRICT JUDGE